NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JEROME O.,

        Petitioner,

v.

CHARLES GREEN,

        Respondent.

Civil Action No. 19-16528 (JMV)

**MEMORANDUM OPINION**

**VAZQUEZ, District Judge:**

It appearing that:

1. Petitioner Jerome O. ("Petitioner") is currently being detained by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE") at Pine Prairie ICE Processing Center in Pine Prairie, Louisiana. On August 6, 2019, while he was detained at Essex County Correctional Facility in Newark, New Jersey, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his detention pending removal. (D.E. No. 1, Petition ("Pet")).

2. Petitioner is a native and citizen of Nigeria who entered the United States in 1981, as a foreign student. (D.E. No. 6, Respondent's Answer ("Answer") at 4). His status was adjusted to that of a lawful permanent resident on October 28, 1981. (*Id.*)

3. On November 8, 2017, ICE took Petitioner into custody and served him with a Notice to Appear in removal proceedings, which charged that he is removable from the United States pursuant to Section 237 (a)(2)(A)(ii) of the Immigration and Nationality Act, on the basis of his

conviction of two crimes involving moral turpitude arising out of a single scheme. (D.E. No. 6-1, Notice to Appear at 15). Petitioner was also advised that he was removable pursuant to Section 237 (a)(2)(A)(iii) of the Immigration and Nationality Act on the basis of his conviction for an aggravated felony for offenses related to money laundering, engaging in monetary transactions in property derived from specific unlawful activity and an attempt or conspiracy to commit an offense described in section 101(a)(43) of the Immigration and Nationality Act, respectively. (*Id.* at 15-16).

4. On December 17, 2017, an Immigration Judge ("IJ") held a master calendar hearing in Petitioner's matter. (D.E. No. 6-4, Answer, DHS Declaration at 1). This hearing was adjourned to allow Petitioner additional time to prepare. (*Id.*)

5. On January 30, 2018, Petitioner appeared, with counsel, for a second master calendar hearing before an IJ. (*Id.*) That hearing was adjourned to allow Petitioner time to prepare and file an application for removal. (*Id.*)

6. Petitioner's subsequent master calendar hearings dated March, 15, 2018, April 24, 2018, and May 24, 2018, respectively were adjourned to allow Petitioner additional time to seek new representation and to prepare. (*Id.* at 2).

7. On July 3, 2018, Petitioner appeared for a master calendar hearing before an IJ. (*Id.*) At that hearing, he filed an application for relief from removal. (*Id.*) The hearing was adjourned until September 17, 2018, to an individual calendar hearing on the merits. (*Id.*) Petitioner's subsequent hearings scheduled for September 17, 2018, and November 28, 2018, were re-scheduled at Petitioner's request. (*Id.*)

8. Petitioner's following hearings scheduled for February 13, 2019, and April 16, 2019, were rescheduled to allow the immigration court an opportunity to conduct IJ reassignment. (*Id.* at 2-

3). Petitioner's hearing scheduled for May 30, 2019, was adjourned for docket management. (*Id.* at 3).

9. On June 7, 2019, Petitioner appeared with counsel for an individual hearing. The IJ denied his application for relief and ordered him removed. (*Id.*) Petitioner subsequently appealed the IJ's decision to the Board of Immigration Appeals on July 8, 2019. (*Id.*) The Board of Immigration Appeals dismissed the matter on December 3, 2019. The United States Court of Appeals for the Third Circuit issued a stay of removal. (D.E. No. 11 at 1).

10. On August 6, 2019, Petitioner filed the instant Petition for a Writ of Habeas Corpus in this Court. (D.E. No. 1, Petition). He argues that his detention violates the Fifth Amendment, the Eighth Amendment and the Immigration and Nationality Act. (*Id.* at 6-7). Petitioner requests that this Court, *inter alia*, "enjoin respondents from moving me from Newark, NJ area . . . hold a hearing to determine facts . . . direct that the Respondents should release me, or in alternative schedule a custody redetermination (bond hearing) before an immigration judge." (*Id.* at 8).

11. Respondent acknowledges that Petitioner has been in immigration custody since November of 2017, but argues that because he is detained pursuant to 8 U.S.C. § 1226(c), he is subject to lawful mandatory detention. (D.E. No. 6, Answer, at 7-8). More specifically, Respondent submits that Petitioner's detention is justified by the overarching rationale that those convicted of crimes do not continue to engage in crime while removal is pending. (*Id.* at 10).

12. Under 28 U.S.C. § 2241(c), habeas relief "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is alleged to be "in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c) (3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

13. The Court has subject matter jurisdiction over this Petitioner under § 2241, because Petitioner was detained within its jurisdiction by a custodian within its jurisdiction, at the time he filed his petition. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) and *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-95, 500 (1973).

14. In 2018, the United States Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), held that the Ninth Circuit Court of Appeals erred by interpreting an implicit six-month limitation on detention pursuant to § 1226(c) absent a bail hearing. *Jennings* essentially abrogated the Third Circuit Court of Appeals' decisions in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011); and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), which read implicit time limitations into statutes such as § 1226(c). The *Jennings* Court explained,

> [Section] 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting- but not requiring- the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in [§ 1226 (c)]." Section 1226(c) states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(C)(1). Section 1226(c) then goes on to specify that the Attorney General "may release" one of those aliens "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk. § 1226(c)(2) (emphasis added).

> [Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those recognized by the statute. And together with §

4

1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue "pending a decision on whether the alien is to be removed from the United States." § 1226(a).

. . . the Court of Appeals held [] that § 1226(c) should be interpreted to include an implicit . . . time limit on the length of mandatory detention . . . [T]hat interpretation falls far short of a plausible statutory construction.

In defense of th[is] statutory reading, respondents first argue that § 1226(c)'s "silence" as to the length of detention "cannot be construed to authorize prolonged mandatory detention, because Congress must use 'clearer terms' to authorize 'long-term detention.'" . . . But § 1226(c) is not "silent" as to the length of detention. It mandates detention "pending a decision on whether the alien is to the removed from the United States," § 1226(a), and it expressly prohibits release from detention except for narrow, witness-protection purposes. Even if courts were permitted to fashion . . . time limits out of statutory silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional -avoidance canon does not countenance such textual alchemy.

Indeed, we have held as much in connection with § 1226(c) itself. In *Demore v. Kim*, 537 U.S. [at 529,] we distinguished § 1226(c) from the statutory provision in *Zadvydas* by pointing out that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite determination point" – and not some arbitrary time limit devised by the courts- marks the end of the Government's detention authority under § 1226(c).

Respondents next contend that § 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden, but this argument defies the statutory text. By expressly stating that the covered aliens may be released "only if" certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions.

. . . .

We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion

> of removal proceedings "only if" the alien is released for witness-
> protection purposes.

*Jennings*, 138 S. Ct. at 846-47.

15. Petitioner's current period of immigration detention has lasted approximately twenty-nine months. While the record reflects that Petitioner did request multiple adjournments, particularly during the earlier phase of proceedings before an IJ, some adjournments were through no fault of his. *See Dryden v. Green*, 321 F. Supp. 3d 496, 502-503 (D.N.J. 2018) (post-*Jennings* opinion denying bond hearing citing to Petitioner's "self-inflicted delays, and the lack of any bad faith or unreasonable action on the part of the Government.") Moreover, approximately nine months have passed since an IJ ordered Petitioner's removal, and he remains in custody. In the absence of any indication of delay tactics on the part of the Petitioner, it appears that his ongoing detention has become so unreasonably long as to amount to a denial of due process. *See Thomas C.A. v. Green*, No. 18-1004, 2018 WL 4110941 (D.N.J. Aug. 29, 2018) (post-*Jennings* opinion granting a bond hearing to § 1226(c) immigration detainee held for fifteen-months); *K.A. v. Green*, No. 18-3436, 2018 WL 3742631 (D.N.J. Aug. 7, 2018) (post-*Jennings* opinion granting a bond hearing to § 1226(c) immigration detainee held for nineteen-months); *see also Vega v. Doll*, No. 3:17-CV-01440, 2018 WL 3765431 (M.D. Pa. July 11, 2018) (post-*Jennings* opinion granting a bond hearing to § 1226(c) immigration detainee held for twenty-months). This Court will therefore grant Petitioner's habeas petition and order that an IJ provide Petitioner with a bond hearing within twenty-one days of when this opinion and order are filed.[1]

---

[1] This Court is not authorized to enjoin the government from relocating Petitioner to a detention facility of his choice nor order Petitioner's release as he requests in his petition. The Third Circuit Court of Appeals has repeatedly held that a bond hearing is the appropriate relief for immigration detainees challenging their prolonged detention. *See Diop*, 656 F.3d 221, *see also Chaves-Alvarez*, 783 F.3d 469.

16. At that hearing, "the Government [will be required] to produce individualized evidence that [Petitioner's] continued detention was or is necessary" to further the goals of § 1226(c) – specifically that Petitioner presents neither a danger to the community nor a flight risk. *See Chavez-Alvarez*, 783 F.3d at 477-78 (3d Cir. 2015).

17. Also pending before the Court are Petitioner's motions for transfer of venue. (*See* D.E. Nos. 11, 14, 16).[2] Petitioner submits that the underlying matter should be transferred to the District of New Jersey despite his being physically relocated to detention facilities in other jurisdictions. However, despite Petitioner's physical relocation, this Court retained jurisdiction of the underlying habeas matter because Petitioner was detained within this Court's jurisdiction at the time the petition was filed. *See Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004). Therefore, the motions are denied as moot.

An appropriate order follows.

Dated: 4/3/2020

s/ John Michael Vazquez
JOHN MICHAEL VAZQUEZ
United States District Judge

---

[2] Prior to arriving at his current place of confinement, Petitioner has been re-located to detention facilities in Arizona, Texas, and New Mexico respectively. (*See* D.E. No. 16 at 1).